GREGORY W. STEVENS (USB # 7315)
2825 East Cottonwood Parkway
Cottonwood Corporate Center
Suite 500
Salt Lake County, UT 84121-7060
Telephone: (801) 990-3388
Facsimile: (801) 606-7378
Email: utlaw@aol.com
*Attorney for Plaintiff*
*Hyrum James Geddes*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HYRUM JAMES GEDDES,<br><br>*Plaintiff*,<br>v.<br><br>WEBER COUNTY, WEBER COUNTY SHERIFF'S OFFICE, and DOES 1 through 4, in their individual capacities,<br><br>*Defendants*. | **COMPLAINT**<br>(JURY TRIAL DEMANDED)<br><br>Case No. 1:18-cv-00136-EJF<br>Magistrate Judge Evelyn J. Furse |

As and for this Complaint against Defendant Weber County (the "County"), a political subdivision of the State of Utah; Weber County Sheriff's Office ("WCSO"), a political subdivision of the State of Utah; and Does 1 through 4, in their individual capacities, who at all relevant times were acting under color of law and as an officer, employee and agent of the County, collectively, the "Defendants," Plaintiff Hyrum James Geddes, by and through his attorney, alleges as follows:

## NATURE OF THE CASE

1. This civil action seeks damages against pursuant to 42 U.S.C. § 1983 against: (a) Does 1 through 4, in their individual capacities acting under color of law as officers, employees and agents of the County and WCSO, for their violation of the Fourteenth Amendment based on their use of excessive force against Mr. Geddes that was objectively unreasonable given that no force was necessary at all, in violation of 42 U.S.C. § 1983; and (b) the County and WCSO, based on their deliberate indifference to the rights of Mr. Geddes and other members of the public under pretrial detention under the Fourteenth Amendment; and by their inadequate training, supervision, lack of discipline, and continued retention of Does 1 through 4, and the ratification of the actions of Does 1 through 4 by the County and Department, in violation of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to the following provisions: (a) 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States; (b) 28 U.S.C. § 1343(3), because this action arises under a law of the United States providing for equal rights; and (c) 42 U.S.C. §§ 1983 and 1988, because this action is being brought pursuant to Section 1983 to redress deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendants reside and have been located within the jurisdiction of this Court; and because the unlawful actions were committed by the Defendants within the jurisdiction of this Court.

## PARTIES

4. Plaintiff Hyrum James Geddes is a citizen of the United States and was, during all times relevant to this Complaint, a resident of the State of Arizona.

5. Does 1 through 4, presently unnamed Defendants in this action, upon information and belief, are, and during all relevant times have been, employees of Defendant WCSO and, in particular, were employed by WCSO at the Weber County Correctional Facility (the "Correctional Facility") as Correctional Officers, were acting during all times relevant to this Complaint in their official capacities and under color of law; and are being sued in their individual capacities; and resides in Weber County, Utah.

6. Defendant WCSO, upon information and belief, is, and during all relevant times has been, a political subdivision of the State of Utah; and, in that capacity, operates and manages the Correctional Facility within Weber County and the employer of Does 1 through 4, and is and has been the final policy-making authority over personnel decisions in WCSO and the Correctional Facility; and has its principal place of business located in Weber County, Utah.

## NOTICE OF CLAIM

7. The requirements prescribed by Utah's statutory notice of claim provisions, including the Governmental Immunity Act of Utah (the "Act"), Utah Code Ann. § 63-30d-401, are not applicable to the claims being asserted in this civil action because the claims being asserted in this civil action are being brought pursuant to 42 U.S.C. § 1983.

## EVENTS REQUIRING RELIEF

### Conduct Under Color of Law

8. During all times relevant to this Complaint, each of Defendants was acting under color of the Constitution and, statutes, laws, ordinances, rules, regulations, customs, and usages of the State of Utah, Weber County, WCSO, and the United States.

9. At all times relevant to this Complaint, the Defendants had the duty and opportunity not to interfere with and violate the mental and physical well-being and freedom of Mr. Geddes and other members of the public with whom Does 1 through 4 would come into contact.

10. Does 1 through 4, upon information and belief, engaged in the conduct described below in accordance with custom, policy and/or practice of the County and WCSO that encouraged, permitted and/or condoned such activity.

11. During all times relevant to this Complaint, each Defendant engaged in the wrongful acts described below with malice, evil intent, and reckless or callous indifference to the federally protected rights of Mr. Geddes.

-4-

### Mr. Geddes' Arrest

12. On July 16, 2017, Mr. Geddes was driving from a friend's house and was pulled over by a Utah Highway Patrol Trooper at approximately 2:57 p.m. within the corporate limits of Ogden City.

13. Mr. Geddes was subsequently charged by Ogden City with speeding at 10 m.p.h. over the posted limit (an Infraction), driving under the influence (a Class B Misdemeanor), and carrying a dangerous weapon (a Class B Misdemeanor) for having two inaccessible firearms, which were locked in a toolbox in the bed of his pick-up truck, while under the influence of alcohol.

14. The Trooper asserted in a probable cause affidavit that Mr. Geddes' speech was slow and slurred and that he smelled of alcohol, though in fact he had not had an alcoholic drink since the night before.

15. The Trooper transported Mr. Geddes to the Weber County Correctional Facility and obtained a warrant for a blood draw.

16. Blood was drawn at the Weber County Correctional Facility at 4:53 p.m. on July 16, 2017, approximately 20 hours after Mr. Geddes had consumed an alcoholic beverage; but the toxicology results showed that Mr. Geddes had a blood alcohol content of .25 grams per 100 milliliters of blood.

17. Mr. Geddes and his family, however, have concerns about the blood draw performed at the Weber County Correctional Facility.

**The Unjustified Use of Deadly Force**

18. While he was being held at the Correctional Facility, Mr. Geddes was respectful and cooperative with the arresting Trooper, all Correctional Officers, and the booking personnel.

19. After being searched and his personal property removed from his pockets, Mr. Geddes was placed by Correctional Officers into a holding cell at the Weber County Correctional Facility.

20. While in a holding cell and while in handcuffs, Correctional Officers Does 1 through 4 asked Mr. Geddes to remove his boots.

21. At that point, Mr. Geddes, who had been thirsty for a long period, asked for a glass of water; and, in response, one of the Correctional Officers threatened Mr. Geddes, saying "remove your boots or we will remove them for you!"

22. Stunned by the harshness of the reaction to Mr. Geddes' request, Mr. Geddes simply responded, "really?"

23. Before Mr. Geddes was able to say or do anything else, Does 1 through 4 rushed him, grabbed him, and violently attacked Mr. Geddes, who was still in handcuffs and unable to brace or catch himself, and slammed his head into the brick wall and concrete floor with substantial, potentially deadly force.

24. While they had Mr. Geddes pinned to the ground, Does 1 through 4 then forcibly removed Mr. Geddes' boots, again while he was still in handcuffs.

25. While removing Mr. Geddes boots, Does 1 through 4 violently attacked Mr. Geddes, who was still in handcuffs, pinning him to the ground with a knee and smashing the back of his head and face into the concrete.

26. When Does 1 through 4 got up from pinning Mr. Geddes to the ground, one of them said, "stay down!"

27. The incident in the holding cell was, upon information and belief, recorded by the Correctional Facility but, after repeated requests were made to the prosecuting attorney by Mr. Geddes' defense attorney in the criminal proceeding, the WCSO claimed that it had not been preserved and that it no longer existed.

28. The reason proffered by the WCSO for the failure to produce the recording is not credible; and, upon information and belief, the WCSO either intentionally destroyed the recording, knowing that it would reflect Mr. Geddes' appearance and the beating that was inflicted on him, or WCSO intentionally permitted the recording not to be preserved in spite of its relevance to a criminal proceeding.

**Deliberate Indifference by the County and WCSO**

29. The County and the WCSO had a clear constitutional duty and obvious need to train, monitor, supervise and/or discipline employees of WCSO who occupied positions as Correctional Officers about recurrent situations that such employees would be certain to face, including but not limited the type of situation set forth above in this Complaint.

30. Failure to provide specific training and failure to monitor, supervise, and/or discipline such employees of WCSO who occupied positions as Correctional Officers of the constitutional limits on the intentional and/or reckless use of deadly force and excessive force, beyond any training provided through Police Officer Standards Training ("POST"), created and creates a highly predictable consequence that a constitutional violation will occur as it did here.

31. The County and WCSO failed to provide specific training beyond that provided through POST and failed to monitor, supervise and/or discipline employees of WCSO, including but not limited to Does 1 through 4, on the use of that is objectively reasonable or unreasonable in recurring situations presented to the Correctional Officers.

32. The actions of Does 1 through 4, through their use of excessive, objectively unreasonable, deadly force by way of a handcuffed detainee, causing serious bodily injury to Mr. Geddes, given that no force at all was needed, alone demonstrate that Does 1 through 4 were not afforded even the minimal training needed to perform the duties of their positions.

33. Such failure to train, monitor, supervise and/or discipline on the part of the County and WCSO, upon information and belief, constituted deliberate indifference to the constitutional rights of Mr. Geddes and members of the public under the Fourteenth Amendment.

### Ratification of the Actions of Does 1 through 4

34. The County, by and through the WCSO, recorded the events described above in this Complaint by way of one or more cameras located at the Correctional Facility that monitored the cell in which Mr. Geddes was attacked and beaten.

35. The County, by and through the WCSO, claimed to have lost the recording of the incidents described in this Complaint, by, according to the WCSO, upgrading its computer server and, in so doing, failing to preserve and maintain the recording of those events.

36. The County and WCSO ratified and approved of the actions of Does 1 through 4 more fully described above and showed a deliberate and/or reckless indifference to whether Does 1 through 4 engaged in such a constitutional violation.

37. Does 1 through 4, upon information and belief, continue to be employed by WCSO as Correctional Officers.

### Mr. Geddes's Injuries and Losses

38. As a direct and proximate result of the wrongful activities of the Defendants described in the foregoing paragraphs of this Complaint, Mr. Geddes suffered serious, life-threatening physical injuries.

39. Although Mr. Geddes suffered serious, life-threatening injuries as a result of the unjustified use of deadly force by Does 1 through 4, Mr. Geddes survived.

40. The use of such excessive, objectively unreasonable, deadly force by Does 1 through 4 caused Mr. Geddes to suffer a massive head injury, substantial injury to his elbow

and wrists (from the handcuffs that he was still wearing), and significant injury to both of his knees.

41. Shortly after the use of such excessive, deadly force by the Officers, Mr. Geddes experienced blurry vision, cognitive difficulties, and substantial pain to the back and side of his head.

42. Later, after Mr. Geddes was then placed in a cell in the general population with other inmates, Mr. Geddes was seen by a nurse and given an ice pack for his head.

43. Mr. Geddes' father spoke with the Commander at the Correctional Facility, who appeared to be fully aware of the severity of the injuries sustained by Mr. Geddes but declined to provide any assurance that the Officers would not step into Mr. Geddes' cell and beat him up again and was unable to provide any assurance as to Mr. Geddes' existing health.

44. During the same conversation, the Commander of the Facility also told Mr. Geddes' father that the nurse would call him; and, when she never did so, Mr. Geddes called the nurse, who would not provide any information about the seriousness of the injuries that Mr. Geddes had sustained as a result of the beating but said that the Officers would be on "better behavior" because of her observation of Mr. Geddes.

45. After a long wait, Mr. Geddes was able to call his brother, who, in turn, arrived at the Correctional Facility to bail Mr. Geddes out because of the Facility's inability to vouch for the safety and health of Mr. Geddes.

46. Having observed the seriousness of the injuries that Mr. Geddes had sustained, Mr. Geddes' brother took him immediately to the Emergency Room at McKay Dee Hospital, where he was given an x-ray of his elbow and a CT scan of his head.

47. After the Hospital determined that Mr. Geddes did not appear to have suffered injuries that threatened his life at that point, he was released from the Hospital with some extra strength Ibuprofen and a large ice pack.

48. After he was released, Mr. Geddes could barely wash his hair that night due to the tenderness of his head.

49. When he tried to lie down. Mr. Geddes could only lie on one side because of the pain in his head and elbow.

50. Mr. Geddes awoke frequently from the pain and flashbacks of the beating that he had experienced by the Correctional Officers.

51. Over the next couple of days, Mr. Geddes fell in and out of consciousness and was unable to get out of bed.

52. Mr. Geddes also lost his appetite and experienced depression as a result of the pain and beating.

53. Mr. Geddes constantly had a headache and anything, including noise, light, standing up or even moving, made the headache worse.

54. Following the beating, Mr. Geddes continued to experience dizziness and became so lightheaded and faint that he would need to sit or lie down for a period.

55. Also following the beating, Mr. Geddes experienced confusion in trying to handle everyday tasks and was unable to or struggled to complete ordinary tasks; and felt clumsy and stumbled throughout the day.

56. For the first few days following the beating, Mr. Geddes was unable to read due to his blurred vision.

57. As a further consequence of the beating, Mr. Geddes also was unable to remember events in his past.

58. Mr. Geddes also continues to experience extreme pain in his knees, elbow and wrists as a result of the beating.

59. Mr. Geddes' headaches have reduced in frequency but he still experiences painful headaches that resulted from the beating; and his left eye does not appear to open as much as his right eye.

60. Mr. Geddes also continues to experience cognitive difficulties and difficulties with coordination as a result of the injuries inflicted by Does 1 through 4, difficulties which, Mr. Geddes has been informed and believes, will continue for the rest of his life.

61. As a further direct and proximate result of the wrongful activities of the Defendants described in the foregoing paragraphs of this Complaint, Mr. Geddes has incurred actual medical expenses for treatment to his physical injuries, all in an amount to be determined at trial.

62. As a further direct and proximate result of the wrongful activities of the Defendants described in the foregoing paragraphs of this Complaint, Mr. Geddes anticipates that he will suffer physically and mentally from the beating inflicted by Does 1 through 4, and will require continued physical rehabilitation, for the rest of his life.

63. As a further direct and proximate result of the wrongful activities of the Defendants described in the foregoing paragraphs of this Complaint, Mr. Geddes experienced and will continue to experience trauma, stress, emotional pain, suffering, and inconvenience of being subjected to excessive, deadly force when no force was required.

## CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983
### Deprivation of Rights Under the Fourteenth Amendment
### (Does 1 through 4)

64. The allegations contained in the preceding paragraphs of this Complaint are restated as part of this Count as if fully alleged herein.

65. Does 1 through 4 participated personally and directly in the conduct, described more fully above, in which they employed deadly force against Mr. Geddes and beat him unconscious.

66. By virtue of the activities described in the foregoing paragraphs of this Complaint stated in this Count, Does 1 through 4 violated clearly established statutory and constitutional rights of which a reasonable person would have known, based on the use of deadly force against Mr. Geddes by Does 1 through 4 when the use of force at all was unjustified and unnecessary.

67. The foregoing rights and duties are secured by the Fourteenth Amendment of the United States Constitution and Section 1983 of Title 42 of the United States Code.

68. As a direct and proximate consequence of these violations by Does 1 through 4, Mr. Geddes has been damaged and will continue to be damaged, and Does 1 through 4 are liable for Mr. Geddes's compensatory damages for physical injury to Mr. Geddes; medical expenses and financial damages incurred; emotional pain, suffering, inconvenience and mental anguish; and other nonpecuniary losses, all in an amount not yet fully ascertained but at least equal to approximately $620,000, plus prejudgment interest thereon.

69. Does 1 through 4 are also responsible to pay punitive damages, to punish these Defendants and to deter them and others from engaging in the same type of unlawful conduct in the future, in an amount not yet fully ascertained, but at least equal to three times' actual damages, or approximately $1,860,000.

## COUNT II
## 42 U.S.C. § 1983
### Deprivation of Rights Under the Fourteenth Amendment
### (Weber County and WCSO)

70. The allegations contained in the foregoing paragraphs of this Complaint are realleged as if fully stated herein.

71. By virtue of the activities described in the foregoing paragraphs of this Complaint, the County and WCSO violated clearly established statutory and constitutional rights of which a reasonable person would have known by having a custom, policy or practice that encouraged, permitted and/or condoned the activity in which Does 1 through 4 engaged.

72. By virtue of the activities described in the foregoing paragraphs of this Complaint, the County and WCSO also engaged in deliberate indifference and/or reckless disregard of the deprivation of Mr. Geddes's rights under the Fourteenth Amendment as more fully described above, including but not limited to these Defendants' failure to train, monitor, supervise, and/or discipline Does 1 through 4; and the ratification of the unlawful conduct of the Does 1 through 4 by the County and WCSO.

73. Also by virtue of the activities described in the foregoing paragraphs of this Complaint, the County, by and through the Correctional Facility, has willfully and knowingly participated directly in an attempt to cover up the beating described above through the "loss" of the video recording of events described in this Complaint.

74. The foregoing rights and duties are secured by the Fourteenth Amendment of the United States Constitution and Section 1983 of Title 42 of the United States Code.

75. The foregoing deliberate indifference by the County and WCSO was the proximate cause of the injuries to Mr. Geddes described more fully above.

76. As a direct and proximate consequence of these violations by the County and WCSO, Mr. Geddes has been damaged and will continue to be damaged, and the County and WCSO are liable for Mr. Geddes's compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, all in an amount not yet fully ascertained but at least equal to approximately $620,000, plus prejudgment interest thereon.

## REQUEST FOR RELIEF

77. WHEREFORE, Mr. Geddes respectfully demands judgment awarding him the following:

(a) on Count I, judgment that Does 1 through 4 violated Section 1983 of Title 42 of the United States Code and that Mr. Geddes is entitled to damages from Does 1 through 4 in an amount to be determined at trial, including but not limited to compensatory damages for physical injury pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial but at least equal to $620,000; and punitive damages to punish and deter Does 1 through 4 and to deter others from engaging in the same unlawful conduct, in an amount to be determined at trial but at least equal to three times' actual damages, or $1,860,000;

(b) on Count II, judgment that the County and WCSO violated Section 1983 of Title 42 of the United States Code and that Mr. Geddes is entitled to damages from the County and WCSO in an amount to be determined at trial, including but not limited to compensatory damages for pain, suffering, mental anguish, humiliation and inconvenience, all in an amount to be determined at trial but at least equal to $620,000;

(c) costs and disbursements, including reasonable attorney's fees at prevailing market rates, for attorney's with approximately 30 years' experience and substantial experience in handling civil rights cases and jury trials, incurred by Mr. Geddes in pursuing this civil action and any appeal of the judgment in this civil action, pursuant to 42 U.S.C. § 1988;

(d) prejudgment interest accrued between the date of the jury's verdict and final judgment, and post-judgment interest accrued between the date of final judgment and the full and complete satisfaction of the judgment; and

(e) such other and further relief as the Court may deem appropriate, including but not limited to reinstatement and such other relief as is necessary to effectuate the purposes of Section 1983 of Title 42 of the United States Code.

## JURY TRIAL DEMAND

78. Mr. Geddes demands a trial by jury on each of the claims set forth in this Complaint.

Respectfully submitted this 23rd day of October 2018:

          */s/ Gregory W. Stevens*
          Gregory W. Stevens
          *Attorney for Plaintiff*
          *Hyrum James Geddes*