Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
office@mylarlaw.com

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HYRUM JAMES GEDDES,<br><br>Plaintiff,<br><br>v.<br><br>WEBER COUNTY, et al.,<br><br>Defendants. | **MOTION FOR SUMMARY JUDGMENT<br>AND MEMORANDUM IN SUPPORT**<br><br>Case No. 1:18-cv-136-HCN-PMW<br><br>District Judge Howard C. Nielson, Jr.<br>Chief Magistrate Judge Paul M. Warner |

Defendants, Weber County, Wayne Moss, Robert Shaner, Karlee Drake, and Jamie Toone, through their attorney, Frank D. Mylar, respectfully submit this Motion for Summary Judgment and Memorandum in Support. This motion should be granted based upon the pleadings, the Declarations of Defendants, the depositions of witnesses, the records, and the following argument.

**MOTION AND REQUESTED RELIEF**

Plaintiff brings two causes of action under 42 U.S.C. § 1983 for alleged excessive force during the pre-booking process, in violation of the Fourteenth Amendment of the United States Constitution; one cause of action against Weber County and the other claim against the four individual Defendants. However, Plaintiff's amended complaint does not state a cognizable cause of action against the defendants and the individual Defendants are entitled to qualified immunity.

**WHEREFORE**: This Court should summarily enter summary judgment in favor of all Defendants and dismiss all claims against with prejudice.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff Hyrum Geddes original Complaint was filed on October 23, 2018 and brought claims under the Fourteenth Amendment of the United States Constitution as it related to Mr. Geddes's arrest and booking at the Weber County Jail in July 2017. (Dkt. 2 ¶ 1).

2. An Amended Complaint was filed on February 11, 2019, adding four new individual Defendants. The Amended Complaint still brought claims only under the Fourteenth Amendment of the United States Constitution. (Dkt. 15 ¶ 67, ¶ 74).

3. Mr. Geddes was arrested by a Utah Highway Patrol (UHP) officer on July 16, 2017 at approximately 2:57 p.m. and brought to the Weber County Jail by the same officer. (*See* Dkt. 15 ¶ 12; and the "Summons and Citation" issued by UHP, Pl.'s Bates No. 0025-0030, an exact copy of this is attached to this motion as Exhibit 1).

4. At approximately 4:00 p.m. on July 16, 2017 while being booked in the jail Mr. Geddes was asked to remove his boots as part of the standard search process. Mr. Geddes refused to remove his boots and demanded a drink of water before he would remove his boots. (Geddes Depo. 34:25-35:18, 36:2-20, an exact copy is attached to this motion as Exhibit 2).

5. This entire incident that is alleged in the Amended Complaint was captured on video and clearly shows that Mr. Geddes was not beat up by the Defendants, contrary to what is alleged in the pleadings. (Exhibit 3 attached to the Declaration of Sheriff Terry Thompson).

6. After this incident, the arresting officer from UHP filed a Probable Cause Affidavit and Order for Detention at approximately 5:36 p.m. on July 16, 2017, well after the boot removal

incident. (*See* "Probable Cause Affidavit and Order for Detention," Plaintiffs' Bates No. 0024, an exact copy of this is attached to this motion as Exhibit 4).

7. The Judge signed a Probable Cause Judgment for Mr. Geddes to be held in the Weber County Jail sometime after 5:36 p.m. on July 16, 2017. (Ex. 4).

8. The Sheriff, the County's final policymaker, was never involved in the booking incident and had no prior knowledge of it. (Thompson Decl. ¶¶ 3-4).

9. Weber County had policies and procedures to ensure that no contraband entered the Jail and that force used was within constitutional bounds. (See Exhibit 5, the Jail's Inmate Reception Policy attached to the Declaration of Sheriff Thompson; and Exhibit 6, the Jail's use of policy, also attached to the Declaration of Sheriff Thompson).

## ARGUMENT

**I. Standard of Review:**

Rule 56(a) of the Federal Rules of Civil Procedure mandates that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Undisputed facts are established by citing to the "record" such as to depositions and declarations. Fed. R. Civ. P. 56(c). Defendants, in this motion, establish that the "material" facts are not in dispute and there is no basis for liability against any of them. Based upon these facts, the Court should enter summary judgment in favor of Defendants.

**II. Plaintiff's Fourteenth Amendment claim is not cognizable.**

Plaintiff's Amended Complaint fails to state a valid claim for relief based upon the undisputed material facts of this case. A complaint must "state a claim to relief that is plausible on

3

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In a Section 1983 context "[a plaintiff] must allege facts sufficient to show (assuming they are true) that the [defendant] plausibly violated [his] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the [defendant] notice of the theory under which [his] claim is made." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The undisputed material facts do not entitle Plaintiff to any relief as a matter of law.

Plaintiff has two claims for relief in his Amended Complaint. The first claim is alleged against the individual Defendants and the second claim is directed towards Weber County. (Dkt. 15 ¶¶ 64-76). Both of these claims invoke the Fourteenth Amendment as the sole basis for the alleged legal violation. (Dkt. 15 ¶ 67, ¶ 74). Yet Plaintiff cannot point to any facts that would show a Fourteenth Amendment violation.

Plaintiff incorrectly claims that he was a "pretrial detainee" in his Amended Complaint: he was not. It is undisputed that Plaintiff was an "arrestee" who was detained without a warrant and prior to a judicial probable cause determination. He was not a "pre-trial detainee" during the alleged use of force because the Judge had not signed the probable cause determination order until well after the incident. The booking incident occurred at about 4:00 p.m. and the State Trooper did not submit his probable cause statement until 5:36 p.m. Sometime after that, the Judge entered his probable cause order.

The Tenth Circuit Court of Appeals ruled several years ago that the Fourteenth Amendment does not apply prior to a judicial probable cause determination. *See Austin v. Hamilton*, 945 F.2d

1155, 1160 (10th Cir. 1991). More recently, that Court again ruled that the Fourteenth Amendment does not apply to an arrestee prior to a judicial probable cause determination and that differently legal standards apply to different constitutional claims. The Court held, "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from 'treatment of [an] arrestee detained *without a warrant*' and '*prior to* any probable cause hearing.'" *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 419 (10th Cir. 2014) (brackets and italics in original) (*quoting Austin*, 945 F.2d at 1160)). As such, Plaintiff's claims cannot be brought under the Fourteenth Amendment and must be dismissed.

Pleading requirements demand notice of the theory with which a claim is brought. *See Robbins*, 519 F.3d at 1249. Plaintiff has not put Defendants on notice of a Fourteenth Amendment claim based upon the alleged facts and based upon the summary judgment record. Plaintiff even amended his complaint but continued to assert claims under the Fourteenth Amendment claims. "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment . . . and each carries with it a very different legal test." *Walton*, 745 F.3d at 418-19 (*quoting Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010)). As such, it is essential that Plaintiff alleges an excessive force claim under the correct amendment, so Defendants are not left guessing which test applies. Since the Fourteenth Amendment does not apply to the facts of this case, all claims must be dismissed.

### III. The individual Defendants are entitled to qualified immunity.

A defendant who raises an affirmative defense of qualified immunity effectively shifts the burden to the plaintiff as a matter of law to show that (1) the defendant's actions violated a constitutional right and (2) the right was clearly established at the time of the defendant's conduct.

5

*Anderson v. Creighton*, 483 U.S. 635 (1987); *Romero v. Board of County Comm'rs*, 60 F.3d 702 (10th Cir. 1995). Ordinarily a Tenth Circuit Court of Appeals or United States Supreme Court decision on point is needed to show a law is clearly established. Plaintiff cannot show that the law was clearly established that Defendants could have violated Plaintiff's Fourteenth Amendment rights prior to a judicial probable cause determination. In fact, the case law in the Tenth Circuit states the opposite. See *Walton*, 745 F.3d at 419.

Qualified immunity shields an officer from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). It is further important to emphasize that the inquiry must be made in light of the specific context of the case and not as a broad proposition. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The inquiry is the more "particularized" acts of the defendants in the case at hand. *Id.* at 199.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). It protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* Plaintiff cannot show that Defendants were "plainly incompetent" or knowingly violated the law. Qualified immunity protects officials from liability insofar as their conduct does not violate clearly established constitutional law "of which a reasonable person would have known." See *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Moreover, the United States Supreme Court has twice since 2018 admonished courts that the qualified immunity analysis for excessive force claims requires special attention:

> "Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how

> the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. . . .
>
> "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."

*City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (*quoting Kisela v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018)).

In *Kisela*, the High Court reversed the Ninth Circuit Court of Appeals and held that an officer was entitled to qualified immunity. The officer shot a woman armed with a knife who was ignoring officer commands and threatening another woman. *Kisela*, 138 S. Ct. at 1151. The court found that the cases relied on by the Ninth Circuit did give sufficient notice to the officer that his actions were unconstitutional. *Id.* at 1154. *Kisela* demonstrates that Plaintiff cannot simply point to some case where a court found excessive force was used to show that the law was clearly established, but rather she must point to a specific case with facts analogous to the facts of this case.

In this case, the law is actually clearly established that using force against an arrestee is not actionable under the Fourteenth Amendment. *Walton*, 745 F.3d at 419. In addition, the video shows that no party used excessive force against the Plaintiff while trying to remove his boots. Removing boots is a necessary part of the booking process in that an arrestee could be hiding contraband or weapons in boots. It is not appropriate for an arrestee to simply refuse to remove his boots. For these reasons, the individual Defendants are entitled to qualified immunity.

7

**IV.     Plaintiff failed to allege facts that support County liability.**

Plaintiff's Second Cause of Action is a municipal liability claim against Weber County. (Dkt. 15 ¶¶ 70-76). A governmental entity under 42 U.S.C. § 1983 may only be liable "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (*citing Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). "But, under § 1983, local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions." *Id.* (internal citations omitted). A plaintiff must prove that "action pursuant to official municipal policy" caused their injury. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Thus, Plaintiff must show (1) a Constitutionally defective policy, (2) that the final policymaker who implemented the policy or custom acted with "deliberate indifference" to the constitutional rights of the plaintiff, and (3) that the policy or custom "directly caused" and was the "moving force" behind an underlying constitutional violation that caused constitutional harm to the plaintiff. *See generally Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997). In addition, a plaintiff must show an underlying constitutional violation by a county employee against a plaintiff before the municipal entity can be held liable under Section 1983. *Hinton v. City of Elwood,* 997 F.2d 774, 782 (10th Cir. 1993); *see also City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Based upon Point II above, since there cannot be a Fourteenth Amendment violation against the officers, all claims against the County must be dismissed. However, even if the court assumes there was an underlying constitutional violation, the County still could not be liable.

### A. Plaintiff fails to identify a constitutionally defective policy.

Plaintiff fails to even allege in his pleadings a specific policy or training that was "constitutionally defective." It is not sufficient for Plaintiff to vaguely claim that the policy was deficient in some way if she cannot prove it was "constitutionally" deficient. The County is not required to have perfect or even good policies, rather its policies cannot be so constitutionally deficient that they directly caused Decedent to be deprived of his constitutional rights. Without the identification of a specific policy, Plaintiff fails to meet the first prong of *Brown* and all claims against the County and City must be dismissed on this basis alone. *Brown*, 520 U.S. at 403-404.

In his Amended Complaint, Plaintiff merely prefaces three paragraphs with "By virtue of the activities described in the foregoing paragraphs . . . ." (*See* Dkt. 15 ¶¶ 71-73). These conclusory paragraphs are directly seeking to hold the County liable on the basis of respondeat superior, contrary to clearly established law. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983"). Nowhere in the Amended Complaint is a County policy even alluded to or described. This is because Plaintiff cannot show that the official policy was to deploy excessive force when removing boots. Plaintiff's vague conclusions are insufficient to survive even a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. The final policymaker did not act with "deliberate indifference."

Second, Plaintiff fails to allege in his pleadings any wrongful acts of the final policymaker, Sheriff Thompson, that could support a claim that he acted with deliberate indifference to Plaintiff's constitutional rights in implementing an unconstitutional policy. Sheriff Thompson had no knowledge that a policy would deprive anybody of their Fourteenth Amendment rights. (*See*

Thompson Decl. ¶ 14). There are no prior issues that were ever brought to his attention and Plaintiff has absolutely no proof that Sheriff Thompson was on notice of a "pervasive" unconstitutional problem in this area and then simply chose not to take action.

Plaintiff bears a substantial burden to show that a final policymaker acted with deliberate indifference. For example. an official is not responsible to take action to protect against an unknown risk. *See generally* [Farmer v. Brennan, 511 U.S. 825, 847 (1994)](). In addition, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." [*Id*. at 838](). Moreover, officials who know of a substantial risk are free from liability if they responded reasonably to the risk even though harm was not averted. [*Id.* at 844]().

Plaintiff fails to allege any factual support that the Sheriff acted with "deliberate indifference in implementing a policy. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [*Brown*, 520 U.S. at 410](). "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably. [*Id.* at 406-07]().

Based upon the undisputed material facts, Sheriff Thompson, never had knowledge of any defects in policy or in how it was being followed or implemented. Plaintiff has no evidence of any prior unconstitutional examples similar to what he alleges he experienced. The failure to alleviate a significant risk that was not perceived is insufficient to show liability under Section 1983. [*Farmer*, 511 U.S. at 838](). Plaintiff simply has no evidence of any "deliberate indifference" or a culpable state of mind on behalf of Sheriff Thompson in implementing a defective policy.

Therefore, Plaintiff cannot show the County final policymaker, acted with deliberate indifference and for this reason alone, Plaintiff's claim against the County must be dismissed.

### C. Plaintiff cannot show a policy "directly caused" Plaintiff's harm.

It is undisputed that Sheriff Thompson was not personally involved in Plaintiff's booking incident or that he in anyway authorized the alleged actions of the booking officers. However, even if Plaintiff could identify a constitutionally defective policy and that the Sheriff acted with deliberate indifference to Plaintiff's constitutional rights in choosing that policy, he would still have to show "a direct causal link" between an official County policy and the constitutional violation to show county liability under Section 1983. *Brown*, 520 U.S. at 404. "That is, a plaintiff must show that the action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. Moreover, *Brown* ruled that more rigorous standards of causation must be employed when a plaintiff claims injury resulted from the acts of a municipal employee by stating, "rigorous standards of culpability and causation must be applied to ensure that the municipality [or county in this case] is not held liable solely for the actions of its employee." *Id.* at 405. *Brown* further states that claims against a governmental entity which do not involve a claim that the entity directed or authorized the deprivation of federal rights, "present much more difficult problems of proof." *Id*. at 406. Plaintiff cannot show a direct causal link in this case.

Like the plaintiff in *Brown*, Plaintiff seeks to hold the County liable for alleged wrongful acts of its employees even though the final policymaker had no personal involvement in the incidents and did not authorize the alleged misconduct. However, in *Brown*, the parties knew that an employee caused a constitutional deprivation; it is unknown if anyone caused Plaintiff to be

11

deprived of his rights in this case. To hold the County liable, Plaintiff cannot show merely a defect in a policy, but must show that a constitutionally defective policy "directly caused" the injury and that the Sheriff made a "conscious choice among various alternatives to implement a policy or training which would and did cause the constitutional deprivation." *See generally City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985). Plaintiff has no evidence of a "conscious choice" by the Sheriff to implement a defective policy or training and that the policy or training directly caused the violation.

Since Plaintiff failed to articulate a specific constitutional defect in policy or training, this Court is left to guess or surmise what the alleged defect could be, let alone determine if the policy was the "direct cause" of constitutional harm. It is Plaintiff's burden to specifically identify a constitutional defect in policy or training and then show that the constitutional violation was directly caused by the specific "constitutional" defect in policy. Yet without a policy and without deliberate indifference, Plaintiff cannot show the policy directly caused a constitutional violation. Since Plaintiff cannot show a direct causal link, the County cannot be liable.

**V.      Plaintiff cannot sue Weber County Sheriff's Office.**

Plaintiff names both Weber County and Weber County Sheriff's Office as Defendants in this case. (Dkt. 15). However, the Weber County Sheriff's Office is not a separate legal entity from Weber County that is amendable to suit under either Section 1983, or Utah state law.

Weber County Sheriff's Office is indistinguishable from Weber County and should be dismissed for this reason alone. "Sheriff's departments and police departments are not usually considered legal entities subject to suit." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). The Tenth Circuit Court of Appeals found that the City of Denver Police Department was not a

separate suable entity. *Martinez v. Winder*, 771 F.2d 424, 444 (10th Cir. 1985). Furthermore, this Court has stated unequivocally that "subdivisions of counties, such as police departments and sheriffs' offices, are not 'persons' subject to suit under § 1983." *Burbank v. United States Dist. Court*, 2006 U.S. Dist. LEXIS 33086 (D. Utah 2006).

Utah state law determines whether an entity is capable of being sued. *Dean*, 951 F.2d at 1214. Plaintiff cannot point to any authority that would suggest that Weber County Sheriff's Office has the capacity to sue or be sued under Utah law. While Utah law makes clear that counties can sue and be sued, there is no such authority that would support the notion that a sheriff's office could be sued separately. Utah Code Ann. § 17-50-302(2)(a)(i). Therefore, Weber County Sheriff's Office must be dismissed as a Defendant in this matter.

**WHEREFORE:** All of Plaintiff's claims should be dismissed and Plaintiff should be ordered to pay Defendant's attorney fees and costs as allowed by 42 U.S.C. § 1988.

Dated this 18th day of October, 2019.

/s/ *Frank D. Mylar*

Frank D. Mylar
Attorney for Defendants