IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HYRUM JAMES GEDDES,<br><br>Plaintiff,<br><br>v.<br><br>WEBER COUNTY, et al.,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER<br>GRANTING DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT**<br><br>Case No. 1:18-cv-00136<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Hyrum Geddes brought this action under 42 U.S.C. § 1983 against Weber County, the Weber County Sheriff's Office,[1] Weber County Sheriff Wayne Moss, and Deputy Sheriffs Robert Shaner, Karlee Drake, and Jamie Toone. The court grants Defendants' motion for summary judgment.[2]

## I.

On the afternoon of July 16, 2017, Mr. Geddes was pulled over by a Utah Highway Patrol Trooper for speeding. *See* Dkt. No. 15 ¶¶ 12–13 (Amended Compl.); *see also* Dkt. No. 25-2 at 1, 3 (Summons). The trooper noticed that Mr. Geddes's speech was slurred and that he smelled of alcohol. *See* Dkt. No. 25-2 at 3. After searching the vehicle and finding unopened cans of beer and two rifles, the officer arrested Mr. Geddes for speeding, driving under the

---

[1] Mr. Geddes has subsequently conceded that "because the Sheriff's Office is not a separate legal entity from Defendant Weber County and is not amenable to suit under Section 1983 . . . the Court should dismiss, with prejudice, the claim against the WCSO as a distinct and separate entity." Dkt. No. 30 at 1 n.1.

[2] Having reviewed the parties' briefs and the filings in this case, the court finds oral argument unnecessary and rules on Defendants' motion "on the basis of the written memoranda of the parties." *See* DUCiv R 7-1(f).

influence, and carrying a dangerous weapon while under the influence of alcohol. *See id*. at 1. The officer then transported Mr. Geddes to the Weber County Correctional Facility to obtain a warrant that would authorize drawing Mr. Geddes's blood to determine his blood alcohol concentration. *See id*. at 4, 6; *see also* Dkt. No. 15 ¶ 15.

After an initial search at the facility, Mr. Geddes was handcuffed and placed in a holding cell. *See* Dkt. No. 15 ¶ 19; *see also* Dkt. No. 25-3 at 8-9 (Dep. Hyrum Geddes). One of the officers instructed Mr. Geddes to remove his boots. *See* Dkt. No. 25-3 at 9. The parties disagree about what happened next. Mr. Geddes testified at his deposition that when he responded by asking for a glass of water, one of the officers demanded that he remove his boots and threatened that the officers would remove them for him if he failed to comply. *See id*. The officers next rushed into the cell, tackled him, and slammed his body onto the hard, concrete floor. *See id*. at 10. According to Mr. Geddes, the officers then pinned him to the ground and forcibly removed both of his boots. *See* Dkt. No. 15 ¶ 24.

Mr. Geddes testified at his deposition that after the incident he felt significant pain in the back and side of his head, his vision blurred, and he began to experience cognitive difficulties. *See* Dkt. No. 25-3 at 9–10, 13. Mr. Geddes alleges that over the next several days, he slipped in and out of consciousness, had trouble remembering things, and suffered constant headaches. *See* Dkt. No. 15 ¶¶ 51, 53, 57, 59. And Mr. Geddes testified that he still has difficulty reading and remembering things. *See* Dkt. No. 25-3 at 14.

Mr. Geddes then brought this suit, alleging that Defendants violated the Fourteenth Amendment's proscription against excessive force and seeking compensation for his injuries. *See* Dkt. No. 15 ¶¶ 66–67. Defendants have moved for summary judgment. *See* Dkt. No. 25 at 1.

## II.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Material facts are those which "might affect the outcome of the suit under the governing law"—here Section 1983 and the Fourteenth Amendment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1993) (plurality opinion) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Plaintiffs suing under this statute must accordingly identify the constitutional or other federal right that they seek to vindicate. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[I]n any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated."); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (requiring that defendants be given notice of the theory underlying the plaintiff's claims, especially in a § 1983 case, when defendants are often sued in their individual capacities).

Depending on the circumstances, the use of excessive force by police officers or other government officials may violate the Fourth, Fifth, Eighth, or the Fourteenth Amendment, but the rights against excessive force secured by these provisions are not coextensive. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). Setting aside the Fifth Amendment—

3

which governs only federal officers—the rights against excessive force secured by these Amendments apply at different stages of the criminal justice process. *See id*. The Fourth Amendment applies before a judicial determination of probable cause, the Fourteenth Amendment applies after a determination of probable cause and before conviction, and the Eighth Amendment applies after conviction. *See id*. In addition to applying to different stages of the criminal process, "each [Amendment] carries with it a very different legal test." *Id*. at 418–19 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010)).

### III.

The excessive force alleged by Mr. Geddes in this case occurred *before* a probable cause hearing. *Compare* Dkt. No. 26-1 (surveillance video showing that the episode occurred around 4:00 p.m., July 16, 2017), *with* Dkt. No. 25-4 (Probable Cause Aff. & Order of Detention) (showing that the magistrate made a probable cause determination after probable cause affidavit was submitted at 5:36 p.m., July 16, 2017). Indeed, Mr. Geddes acknowledges that at the time of the incident he was detained without a warrant or any judicial determination of probable cause. *See* Dkt. No. 30 at 27 n.5. Consequently, regardless of whether Mr. Geddes might have a cognizable claim under the Fourth Amendment, he does not have a cognizable claim under the Fourteenth Amendment. As the Tenth Circuit has expressly held, "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from 'treatment of [an] arrestee detained *without a warrant*' and '*prior to* any probable cause hearing.'" *Estate of Booker*, 745 F.2d at 419 (quoting *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir.1991)).

Mr. Geddes offers various arguments why his invocation of the Fourteenth rather than the Fourth Amendment should not matter. None of these arguments is persuasive.

First, Mr. Geddes argues that he in fact invoked the correct Amendment because, as a technical matter, the Fourth Amendment applies to state and local officers only by incorporation through the Due Process Clause of the Fourteenth Amendment. *See* Dkt. No. 30 at 9 n.2. But this of course is true of all the provisions of the Bill of Rights that have been held to apply to state and local officers. *See, e.g.*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 763 (2010). It would follow from Mr. Geddes's argument that merely invoking the Fourteenth Amendment would suffice as notice for any number of constitutional claims—from free exercise or free speech claims to Second Amendment or takings claims, to claims based on any of the various rights relating to criminal procedure set forth in the Bill of Rights, and so forth. Embracing this argument would conflict not only with the federal pleading requirements, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Robbins*, 519 F.3d at 1249–50, but also with the framework courts have adopted for applying different constitutional amendments to excessive force claims at different stages of the criminal process, *see Porro*, 624 F.3d at 1325, and the specific holding of *Estate of Booker* that "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained without a warrant and prior to any probable cause hearing," 745 F.3d at 419 (cleaned up). Mr. Geddes's argument is also foreclosed by the Supreme Court's guidance that where a provision of the Bill of Rights "'provides an explicit textual source of constitutional protection' against [the] particular sort of government behavior" that is the subject matter of a claim, that specific provision, rather than the Due Process Clause of the Fourteenth Amendment, "'must be the guide for analyzing'" the claim. *Albright*, 510 U.S. at 273 (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).[3]

---

[3] Mr. Geddes also suggests that his claim may be cognizable under the Fourteenth Amendment because at the time of the incident he "had already been seized . . . based on the Trooper's finding of probable cause" and that the subsequent judicial hearing was not an "actual

Second, Mr. Geddes argues that despite his invocation of the Fourteenth Amendment, his Complaint sufficed to put Defendants on notice that he was asserting a claim under the Fourth Amendment because it provides a factual description of the alleged excessive force and describes this force as "objectively unreasonable." *See* Dkt. No. 30 at 9-10 n.2. But the complaint nowhere references the Fourth Amendment, and in the specific context of excessive force claims, there is a significant difference between the rights secured by the Fourth Amendment and those secured by the Fourteenth Amendment, as explained above. In addition, the Complaint expressly invokes Mr. Geddes's rights as an individual under "pretrial detention," Dkt. No. 15 ¶ 1, which strongly suggests that the Complaint's explicit reliance on the Fourteenth Amendment—which applies to pretrial detainees—as opposed to the Fourth Amendment, was deliberate. And although Plaintiff is correct that objective reasonableness is the touchstone for determining whether force is constitutional under the Fourth Amendment, *see Porro*, 624 F.3d at 1325, it is also relevant to the Fourteenth Amendment analysis, which considers, among other things, "the relationship between the amount of force used and the need presented." *Id*. at 1326 (quotations omitted). Notably, at least two of the Complaint's allegations of "objectively unreasonable" force are cast in language reflecting this aspect of the Fourteenth Amendment test. *See* Dkt. No. 15 ¶ 1 (alleging that the force applied against Mr. Geddes was "objectively unreasonable given that no force was necessary at all"); *id*. ¶ 32 (alleging that the force applied was "objectively unreasonable . . . given that no force at all was needed.")

---

probable cause hearing [but] merely a judicial stamp of approval on the Trooper's finding of probable cause for the arrest and detention.'" Dkt. No. 30 at 34 n.5. Mr. Geddes offers no authority in support of this novel theory, and the court is aware of none. Indeed, this argument appears irreconcilable with the Tenth Circuit's holding in *Estate of Booker* that "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained without a warrant and prior to any probable cause hearing." 745 F.3d at 419 (cleaned up).

Finally, Mr. Geddes argues that his invocation of the Fourteenth Amendment does not matter because "in light of the facts presented here, there is really no practical difference between application of the standards applicable under the Fourth and Fourteenth Amendment to a claim of use of excessive force." Dkt. No. 30 at 31 n.6; *see also id*. at 33 n.5. But as the Tenth Circuit has explained, the various Amendments prohibiting excessive force each embody "a very different legal test." *Estate of Booker*, 745 F.3d at 419–20 (quoting *Porro*, 624 F.3d at 1325). The test of excessive force under the Fourth Amendment is different than under the Fourteenth. *Id*. at 419. For example, although both tests consider the reasonableness of the defendant's actions, the test under the Fourteenth Amendment turns on additional factors, such as "the motives of the state actor." *Id*. (quotations omitted). A plaintiff suing for excessive force thus must correctly identify the Amendment that he or she believes the defendant has violated. As aptly stated by the Tenth Circuit, "the choice of amendment matters." *Id*. (quotations omitted).[4]

## IV.

Because the court finds that Mr. Geddes lacks a cognizable claim under the Fourteenth Amendment, it need not, and does not, address Defendants' alternative arguments that the individual Defendants are entitled to qualified immunity, *see* Dkt No. 25 at 5–7, and that Weber County cannot be held liable for the individual Defendants' conduct, *see id*. at 8–13.

---

[4] To whatever extent Plaintiff can be understood to contend that it does not matter which Amendment he invokes because he is suing "pursuant to 42 U.S.C. § 1983," Dkt. No. 30 at 9 n.2, this argument is foreclosed by the Supreme Court's decision in *Graham*, which expressly rejected the notion "that there is a generic 'right' to be free from excessive force, grounded not in any particular constitutional provision but rather in 'basic principles of § 1983 jurisprudence.'" *Graham*, 490 U.S. at 393 (citations omitted); *see also Albright*, 510 U.S. at 271 ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (citations omitted)).

\* \* \*

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. If this were a motion to dismiss, the court would consider dismissing with leave to amend. But Mr. Geddes has not requested leave to amend if Defendants prevail, and this is a motion for summary judgment. As the First Circuit recently observed, "[a]lthough a motion to dismiss for failure to state a claim sometimes may be converted into a motion for summary judgment," the court "know[s] of no authority that allows for the reverse conversion of a summary judgment motion into a motion to dismiss for failure to state a claim." *Rios-Campbell v. U.S. Dep't of Commerce*, 927 F.3d 21, 24 (1st Cir. 2019). Plaintiff's action is accordingly **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED this 3rd day of August, 2020.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge